YATES *v.* WENK.

1. AUTOMOBILES—WHIPLASH INJURY—EVIDENCE—EXPERT TESTI-
MONY.

It was not reversible error for trial court to admit testimony
of physician that "there is a possible relation between the
accident * * * and the complaints which the patient
makes" in jury trial of action arising out of rear-end colli-
sion resulting in a "whiplash" injury to plaintiff who, previous
to accident, had suffered occasional migraine headaches but
thereafter experienced almost continuous neck and head pains,
where there had been previously introduced other more direct
testimony of causal connection (Court Rule No 37, § 16
[1945]).

2. EVIDENCE—EXPERT OPINION—INSTRUCTIONS.

Expert opinion evidence cast in terms of possibility or probability
should be admitted subject to protective instruction by the
trial judge in his charge to the jury (Court Rule No 37, § 16
[1945]).

3. SAME—EXPERT WITNESSES.

Expert witnesses may now testify, if they can, in terms of the
ultimate issue to be decided by the facts (Court Rule No 37,
§ 16 [1945]).

4. AUTOMOBILES—DAMAGES—EXPERT OPINION—INSTRUCTIONS.

Trial court's alleged failure to instruct jury as to "probative
value" of the testimony of 1 of plaintiff's expert witnesses
as to the cause of her neck and head pains which she suffered

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 15 Am Jur, Damages §§ 334, 335.
[2] 20 Am Jur, Evidence § 795.
[3] 20 Am Jur, Evidence § 782.
[4] 15 Am Jur, Damages § 369 *et seq.*
[5] 3 Am Jur, Appeal and Error § 837.
[6] 15 Am Jur, Damages § 333 *et seq.*
[7, 8] 15 Am Jur, Damages § 73.
[9] 53 Am Jur, Trial § 505.
[10] 15 Am Jur, Damages §§ 211, 233.
Excessiveness of damages in action by person injured for neck
injuries not resulting in death. 16 ALR2d 306.

following "whiplash" injury in rear-end collision *held*, not to have been prejudicial to defendant, where trial court repeatedly charged jury must be "reasonably certain" in describing test to be applied to expert opinion evidence concerning plaintiff's damage claims and did instruct jury to find for plaintiff only as to those damages which the jury found "strictly caused" by the accident.

5. APPEAL AND ERROR—SUMMARY REFUSAL OF REQUESTS TO CHARGE —INSTRUCTIONS.

Trial judge's summary refusal to consider handwritten requests to charge submitted to him by defendant at conclusion of proofs in action arising from rear-end collision *held*, error, but not reversible, where such requests were covered by the instructions given or defendant was not entitled to them.

6. DAMAGES—EVIDENCE—DISCRETION OF COURT.

A trial judge has considerable discretion in allowing evidence to be presented to a jury in the matter of damages in an action arising from an automobile accident.

7. SAME—PAIN AND SUFFERING—ARGUMENT TO JURY—PLEADING— VERDICT.

The same speculative quality which exists in a lawyer's estimate of money value of a day's pain and suffering exists likewise in plaintiff's *ad damnum* clause and in the jury verdict to the extent that they allow for pain and suffering.

8. SAME—PAIN AND SUFFERING—MATHEMATICAL FORMULA—ARGUMENT TO JURY.

Use of mathematical formula to evaluate pain on a daily basis by plaintiff's attorney in argument to jury relative to plaintiff's pain and suffering in an attempt to assist jury in placing a monetary value thereon, permitted by trial judge and without objection by defendant, *held*, not to have resulted in prejudice to defendant.

9. TRIAL—ARGUMENT TO JURY—FAILURE TO OBJECT—WAIVER.

The failure of counsel to draw trial court's attention to improper argument by opponent's counsel waives the right to objection unless the statement is so extremely prejudicial that even a correction by the court would not undo the harm.

10. DAMAGES—EXCESSIVE VERDICT—WHIPLASH INJURY.

Verdict of $18,000 for 40-year-old plaintiff who sustained out-of-pocket expenses of approximately $5,000 and some 2 years of pain and suffering from "whiplash" injury in rear-end accident *held*, not excessive, there being testimony that the pain would continue for the rest of her life.

Appeal from Washtenaw; Breakey, Jr. (James R.), J. Submitted January 5, 1961. (Docket No. 41, Calendar No. 48,773.) Decided June 28, 1961.

Case by Eileen P. Yates against Herbert C. Wenk for personal injuries sustained in automobile collision on June 28, 1956. Judgment for plaintiff. Defendant appeals. Affirmed.

*Schwartz, O'Hare, Sweeney & Sullivan* (*Stephen M. Sweeney* and *Boaz Siegel,* of counsel), for plaintiff.

*Louis M. Dyll* and *Burke, Burke & Ryan,* for defendant.

Edwards, J. This is a suit for damages resulting from a rear-end collision. Plaintiff had stopped her car in line behind others when defendant's car ran into a third car and drove it into the rear of plaintiff's car. Trial resulted in a judgment for plaintiff based upon a jury's verdict of $18,000. A motion for new trial was made and denied. On appeal defendant claims several grounds for reversal, none of which concerns liability.

Plaintiff suffered a "whiplash" injury in the accident.

For a long period of time prior to the collision plaintiff had suffered occasional migraine headaches. Following the collision she testified she experienced almost continuous neck and head pains. Much of the controversy in this case at trial and on appeal concerns extent of the pain and establishment of a causal connection between plaintiff's condition and the accident.

The only medical testimony in the trial was offered by plaintiff and included the testimony of 2 doctors who treated her for her complaints. Plaintiff's

counsel asked a hypothetical question which concluded:

"Now, Doctor, assuming all of those facts to be true, do you have an opinion, based upon a reasonable medical certainty, as to whether they could be, whether there could be a causal connection between the rear-end collision, which I described at the beginning, the rear-end collision accident, and the condition of pain and ill-being as set forth in this question in that person?"

In response, Dr. Taran testified:

"My opinion is that there is a possible relation between the accident so described and the complaints which the patient makes."

Defendant's counsel objected and asked that the answer be stricken because it was based upon "possibilities, guesses, or conjectures." The trial judge refused and defendant claims error, citing *Buehler* v. *Beadia,* 343 Mich 692, 708, and other authorities. At the outset, it must be observed that we are not dealing here with a jury's verdict which rests alone upon the challenged opinion testimony. The jury had the benefit also of Dr. McIntyre's testimony which had been taken by deposition and which was read to the jury. Dr. McIntyre testified:

"My opinion is that the accident caused her to have the bruising of the nerve roots and the pain which developed as a consequence of it."

Indeed, Dr. Taran himself testified, on cross examination, that the accident was the most probable cause of plaintiff's worsened headaches and pain.

At the time of Dr. Taran's testimony, Dr. McIntyre's deposition had already been introduced in evidence and the trial judge then knew that other more direct testimony of causal connection was before the jury. Under such circumstances, there

exists no valid reason for excluding opinion testimony which was stated in the manner permitted prior to adoption of Court Rule No 37, § 16 (1945).* Even in the absence of prior testimony such as Dr. McIntyre's, expert opinion evidence cast in terms of possibility or probability should be admitted subject to protective instruction by the trial judge in his charge to the jury.

Section 16 was added to Court Rule No 37 in belated recognition of the fact that our prior evidentiary limitations upon expert witnesses, called upon to express opinions concerning matters of specialized knowledge beyond the knowledge of laymen, unduly restricted such witnesses. Such witnesses now may testify, if they can, in terms of the ultimate issue to be decided by the trier of the facts. It would be a strange result if we were to conclude that such witnesses may testify now *only* if they can do so in terms of ultimate fact. Our new rule designed to unseal the lips of experts, instead, would gag them even more effectively than they were before. We find no error in the admission of Dr. Taran's testimony.

Nor do we find error, as defendant claims, in the trial judge's failure to instruct the jury specifically as to the "probative value" of Dr. Taran's opinion testimony. We assume defendant's claim is that the trial judge should have instructed the jury to disregard the testimony or to give it little weight. Even had defendant requested such instruction (and he did not), we believe the trial judge would not have erred in refusing the request.

The court did charge at length on the jury's function in determining the facts concerning plaintiff's claim of injury:

---

* Section 16 was adopted July 31, 1957; effective January 1, 1958. See 349 Mich xiii.—Reporter.

"You shall receive the evidence on damages and discard that which you believe was not caused by, or was not related to the accident. Damages included pain and suffering. There is evidence here that the plaintiff had a history of re-occurring headaches from childhood. Further that her experience with migraine headaches continued to the present time. If you believe that her headaches were caused by the accident then you shall make that decision. In the same way if you find that her headaches were not caused from the accident then you should so determine and disallow as much of such claim as you find was occasioned by her headaches."

In other paragraphs bearing on the same topic, the circuit judge instructed the jury to find for plaintiff only as to those damages which the jury found to have been "strictly caused" by the accident or occasioned as "a direct result of the accident." Four times his charge employed the terms "reasonable certainty" or "reasonably certain," as describing the test to be applied to expert opinion evidence concerning plaintiff's damage claims.

We find no error which was prejudicial to appellant.

Defendant next claims the trial judge committed reversible error in refusing even to consider certain handwritten requests to charge submitted to him by defendant at the conclusion of proofs. The record indicates that the trial judge's refusal was based upon the fact that opposing counsel had not had a chance to see them. We think it would have been better practice for the judge to have reviewed defendant's additional requests with counsel for both parties and to have taken whatever time was necessary to do so. Although trial counsel should be encouraged to prepare requests to charge well in advance of their need by anticipating the issues which the proofs will develop, they should not be

discouraged from making changes therein, or additions thereto, at any time before the jury retires to deliberate if developments in the late stages of the case (or even in the court's charge) indicate such changes or additions are necessary to the protection of the rights of the parties. *Crippen* v. *Hope,* 38 Mich 344.

For a failure to afford counsel an opportunity to submit legitimate requests to charge where prejudice to his client can be fairly inferred, we will not hesitate to reverse. However, in the case at bar, although we conclude error was committed by the summary refusal to consider defendant's additional requests to charge, we do not reverse on this ground, either because the jury instructions given covered the instructions requested or because defendant was not entitled to them. None of the additional requested instructions is of such merit that further discussion thereon in this opinion is warranted.

Finally, defendant directs our attention to plaintiff's lawyer's argument to the jury in which he suggested a mathematical formula to aid in determination of damages for pain and suffering.

The trial judge, in whose hands our rules place considerable discretion, did not believe that the mathematical formula employed by plaintiff's counsel in his jury argument was objectionable. Nor do we. The cases relied upon by appellant which have reversed jury verdicts on this ground have generally cited the impossibility of evaluating pain in dollars and cents (see *Botta* v. *Brunner,* 26 NJ 82 [138 A2d 713, 60 ALR2d 1331]; *Affett* v. *Milwaukee & Suburban Transport Corporation,* 11 Wis2d 604 [106 NW2d 274]). Yet this is exactly the task which is imposed upon the jury and to which the lawyers' arguments are required to be directed.

The same speculative quality which exists in a lawyer's estimate of money value of a day's pain and suffering exists likewise in plaintiff's *ad damnum* clause and in the jury verdict to the extent that they allow for pain and suffering.

Michigan permits plaintiff's claim as set forth in the *ad damnum* clause to be placed before the jury. Court Rule No 37, § 2 (1945). And, like every other State, we require juries to determine the value of pain and suffering. We see little merit in forbidding lawyers to try to help in that difficult task.

Nor are we impressed that plaintiff's lawyer's use of the mathematical formula will lead toward horrendous verdicts. Such an argument is not, like the judge's instruction, binding on the jury. It will undoubtedly be effectively balanced by defendant's lawyer's counterargument. Further, juries automatically discount "lawyer talk" to some degree. And trial judges automatically instruct that such arguments are not evidence.

In addition, if more be needed, the trial and appellate courts have ample means to restrain excessiveness in verdicts.

With respect for the views of our learned brothers in New Jersey (*Botta, supra*) and Wisconsin (*Affett, supra*), we prefer the reasoning on this problem of the Kentucky, Utah, Washington, and Florida courts: *Louisville & Nashville Railroad Company, Inc.*, v. *Mattingly* (Ky), 339 SW2d 155; *Olsen* v. *Preferred Risk Mutual Insurance Company*, 11 Utah2d 23 (354 P2d 575); *Jones* v. *Hogan*, 56 Wash2d 23 (351 P2d 153); *Ratner* v. *Arrington* (Fla), 111 So2d 82.

A lawyer's attempt in his jury argument to evaluate pain on a daily basis for purposes of illustration, we deem no more objectionable than his at-

tempt to place a monetary value on the total pain and suffering experienced.

The defendant made no objection during or after the plaintiff's closing argument, but now claims that it was so objectionable (on this and another ground) that the trial judge could not have corrected the harm done even if timely objection had been made.

This Court held in *Taliaferro* v. *Pere Marquette R. Co.*, 249 Mich 281, 287:

"It has been repeatedly held that, if counsel in their argument make improper statements, the attention of the court should be called to it by counsel on the other side. If they do not do so, they waive their right to objection, unless the statement is so extremely prejudicial that even a correction by the court would not undo the harm. * * * The opposite party may not permit such statements to go unchallenged and then on account of them seek a reversal of the case in this Court. *Freeman* v. *Hoag*, 217 Mich 587; *Habitz* v. *Wabash R. Co.*, 170 Mich 71."

See, also, *Schankin* v. *Buskirk*, 354 Mich 490, 498.

It is interesting to note that defendant does not contend that plaintiff's closing argument resulted in an excessive jury verdict to his prejudice or that a miscarriage of justice otherwise resulted therefrom. On this record, we cannot infer such result. Plaintiff was about 40 years old at the time of trial; her out-of-pocket expenses, some disputed, were approximately $5,000; there was evidence of pain and suffering for more than 2 years preceding the trial and testimony substantiating her claim that it would continue for the rest of her life. The verdict of $18,000 does not so shock our consciences that we would be disposed to set it aside as excessive.

We find no prejudicial error.

Affirmed. Costs to plaintiff.

DETHMERS, C. J., and CARR, KELLY, BLACK, KA-
VANAGH, and SOURIS, JJ., concurred.

SMITH, J., did not sit.