JUDY ALLISON, Plaintiff-Appellee, v. JoANN STALTER, Defendant-Appellant.

Fourth District No. 4—93—0146

Argued August 19, 1993.—Opinion filed September 30, 1993.

Kenneth L. Strong and C. Thomas Blakeman (argued), both of Strong, Blakeman & Schrock, Ltd., of Pontiac, for appellant.

David J. Babb, Jr. (argued), of Fellheimer, Travers & Engelman, Ltd., of Pontiac, for appellee.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In July 1986, plaintiff, Judy Allison, and defendant, JoAnn Stalter, were involved in a car accident. In April 1989, plaintiff sued defendant, claiming she suffered personal injuries because of defendant's negligent driving. In October 1992, a jury returned a verdict for plaintiff assessing damages of $89,230.56 against defendant, the sum plaintiff's counsel suggested during oral argument. The trial court denied defendant's motion for a new trial and entered judgment on the verdict. Defendant appeals, arguing that (1) plaintiff's argument improperly used a *per diem* or formula argument for assessing pain and suffering; and (2) the trial court erred by permitting a memorandum of damages excerpted from plaintiff's closing argument to be delivered to the jury room.

We affirm.

## I. FACTS

On the date in question, defendant's vehicle struck plaintiff's vehicle in the rear. Just prior to the accident, plaintiff had stopped her car behind an automobile which was waiting to make a left-hand turn. As a result of the accident, plaintiff suffered neck injuries for which she had been receiving treatment continuously as of the date of trial. At trial, plaintiff presented testimony that her injuries were permanent and she might incur future medical expenses of an indefinite amount.

During closing argument, plaintiff's counsel suggested that the jury compensate plaintiff for her pain and suffering for the 6.2 years from the date of the accident to the time of trial at $5,000 per year, totaling

$31,000. Counsel also pointed out that plaintiff was 16 years old at the time of the accident. He then suggested, based on an expectancy that she would live another 55.8 years, that an award of $600 per year would be appropriate for future pain and suffering, totaling $33,480. Defendant objected that plaintiff improperly raised a *per diem* argument. The court responded: "The jury will be instructed to not simply arrive at damages by multiplication, but the counsel is entitled to tell you what the life expectancy of the plaintiff is." Plaintiff's counsel then concluded his argument with a suggestion to the jury that the sum of $89,230.56 would be an appropriate award for all the elements of damages.

When the jury retired to deliberate, defendant's counsel waived his presence at further proceedings. Approximately one hour later, the jury sent a note to the judge requesting a specific breakdown of the amount of damages plaintiff's counsel suggested in his closing argument. The trial court unsuccessfully attempted to reach defendant's counsel at both his home and his office and then directed plaintiff's counsel to prepare a written memorandum of the damages he suggested during his closing argument. Counsel did so, and the court then had that memorandum delivered to the jury. The jury later returned a verdict in favor of plaintiff and assessed damages in the amount of $89,230.56—$9,250.56 as economic damages and $79,980 as noneconomic damages—the exact amount plaintiff's counsel suggested during his closing argument and set forth in the memorandum delivered to the jury.

Defendant filed a post-trial motion arguing that the trial court committed reversible error by delivering to the jury plaintiff's memorandum itemizing damages and by permitting plaintiff to make a *per diem* argument for damages for pain and suffering. In denying defendant's post-trial motion, the court found that (1) submission of the itemized damages was within its discretion, (2) the jurors would have had the same information if they had taken notes during closing argument, and (3) the memorandum was an accurate way of refreshing their recollection. The court also found that defendant had waived any objection she might have had because of her counsel's voluntary absence during the jury's deliberations.

## II. PLAINTIFF'S CLOSING ARGUMENT ON DAMAGES

Defendant first argues that plaintiff made an improper "formula" argument for fixing damages, citing *Caley v. Manicke* (1962), 24 Ill. 2d 390, 182 N.E.2d 206, which condemned a *per diem* calculation of damages. Defendant concedes that subsequent decisions have limited the application of *Caley*. See *Johnson v. Chicago Transit Authority* (1973), 11 Ill. App. 3d 16, 19, 295 N.E.2d 573, 576 (jury admonished that the

amount of damages for pain and suffering was for its determination, and counsel's *per annum* arguments were a small part of his entire argument to which he gave no undue emphasis); *Friedland v. Allis Chalmers Co.* (1987), 159 Ill. App. 3d 1, 8-9, 511 N.E.2d 1199, 1205 (the suggestion of an annual sum multiplied by life expectancy, even assuming it to be a *per diem* argument, was a small portion of the total argument, and counsel indicated the figures merely reflected his own view of what would be fair and reasonable compensation); *Watson v. City of Chicago* (1984), 124 Ill. App. 3d 348, 351, 464 N.E.2d 1100, 1102 (a request for $49,000 for 49 years of pain and suffering did not suggest a mathematical formula, but was merely a proper suggestion of a lump-sum figure for pain and suffering in conjunction with a proper reference to life expectancy).

■ In this case, plaintiff's counsel's closing argument covers approximately 25 pages in the record. That portion of the argument suggesting dollar sums for pain and suffering comprises at most 1½ pages. Further, the trial court admonished the jury that it could not arrive at damages merely by multiplication. We conclude that the argument suggesting sums for past and future pain and suffering based upon the years elapsed since the time of the accident and plaintiff's life expectancy complied with this court's decision in *Thompson v. Lietz* (1981), 95 Ill. App. 3d 384, 391, 420 N.E.2d 232, 238 ("Counsel was suggesting possible figures to the jury for pain and suffering and mentioned [plaintiff's] life expectancy"), as well as the other cases cited earlier. We do not find counsel's argument to be the type of *per diem* argument found to be error in *Caley*.

### III. The Jury's Request For Damages Figures
#### Used In Plaintiff's Closing Argument

Defendant next argues that the trial court committed reversible error by submitting to the jury the memorandum itemizing the elements of damages plaintiff suggested during closing argument.

In response, plaintiff first asserts that defendant waived this issue when her counsel voluntarily absented himself and was unavailable during jury deliberations. In finding waiver, the trial court relied on *dicta* in both *Hunter v. Smallwood* (1975), 28 Ill. App. 3d 386, 328 N.E.2d 344, and *Gale v. Hoekstra* (1978), 56 Ill. App. 3d 400, 375 N.E.2d 456, indicating that actions taken by the trial court in the absence of counsel during jury deliberations were within its discretion and any error was waived.

Defendant asserts that her counsel's absence does not constitute waiver, but (alternatively) if it does, submission of the memo to the jury

may be reviewed as "plain error," a doctrine we note that usually arises only in criminal cases. (See 134 Ill. 2d R. 615(a).) However, some decisions have held that assignments of error not preserved for review may be noticed as "plain error" to the extent the parties cannot otherwise receive a fair trial or a deterioration of the judicial process occurs. (See *Belfield v. Coop* (1956), 8 Ill. 2d 293, 313, 134 N.E.2d 249, 259; *Underwood v. Pennsylvania R.R. Co.* (1966), 34 Ill. 2d 367, 371, 215 N.E.2d 236, 239; *City of Quincy v. V.E. Best Plumbing & Heating Supply Co.* (1959), 17 Ill. 2d 570, 577, 162 N.E.2d 373, 378; see also 134 Ill. 2d R. 366(a)(5).) Because civil proceedings do not implicate sixth amendment concerns (U.S. Const., amend. VI), we hold that application of the plain error doctrine to civil cases should be exceedingly rare and limited to circumstances amounting to an affront to the judicial process.

 Counsel cannot, by his voluntary absence, be permitted to impede the judicial process, or to rely upon reviewing courts to address issues which might have been resolved at trial had he been present. We hold that the absence and unavailability of trial counsel during jury deliberation waives review of any assignment of error arising by virtue of a judicial response to a jury inquiry or request, absent judicial conduct amounting to an affront to the judicial process. For the reasons that follow, we hold that the trial court's conduct in the present case does not even approach constituting an affront to the judicial process.

Defendant argues that the jury should consider only the testimony and exhibits admitted in evidence at trial. She notes that the trial court instructed the jury both that its verdict must be based on the evidence (see Illinois Pattern Jury Instructions, Civil, No. 1.01(3) (3d ed. 1992) (hereinafter IPI Civil 3d)) and that arguments of counsel are not evidence (see IPI Civil 3d No. 1.01(5)). Defendant thus contends that delivering the memorandum of plaintiff's argument to the jury during its deliberations violated section 2—1107(d) of the Code of Civil Procedure (Code) because the memorandum was not documentary evidence "read or received in evidence." Ill. Rev. Stat. 1991, ch. 110, par. 2—1107(d).

In support of her argument, defendant cites cases holding that the trial court erred by permitting a jury to take into the jury room during deliberations matters of any sort which were not admitted into evidence. (See *People v. Carr* (1977), 53 Ill. App. 3d 492, 497, 368 N.E.2d 128, 131; *Gertz v. Bass* (1965), 59 Ill. App. 2d 180, 183, 208 N.E.2d 113, 115.) Defendant also compares the present case to *Griffin v. Subram* (1992), 238 Ill. App. 3d 712, 606 N.E.2d 560, and *Bieles v. Ables* (1992), 234 Ill. App. 3d 269, 599 N.E.2d 469, where submission of extraneous material to the jury constituted reversible error. In *Griffin*, the appellate court found that the trial court committed reversible error when, without first

consulting counsel for either party, that court sent to the jury room a medical chart, used in an attempt to impeach plaintiff's expert during cross-examination but denied admission into evidence. (*Griffin*, 238 Ill. App. 3d at 718-19, 606 N.E.2d at 565.) In *Bieles*, an attorney's trial notes disparaging the credibility of a witness were inadvertently submitted to the jury. The appellate court held that because the credibility of each witness was a crucial element in the decision-making process, notes viewed by the jury impugning the credibility of a particular party's witness would have denied that party a fair trial. *Bieles*, 234 Ill. App. 3d at 272, 599 N.E.2d at 471-72.

Plaintiff, by contrast, compares the itemization submitted here to that submitted in *American National Bank & Trust Co. v. Thompson* (1987), 158 Ill. App. 3d 478, 486, 511 N.E.2d 1206, 1211. In that case, the trial court allowed defendant's handwritten memorandum of mathematical computations, based upon expert testimony as to present cash value, to go to the jury; the appellate court found that the record showed no abuse of the court's discretion. *Thompson*, 158 Ill. App. 3d at 486, 511 N.E.2d at 1211.

We find that submission of the memorandum to the jury was within the court's discretion because that memorandum was based on the evidence presented at trial and figures suggested during closing argument, which the jury was free to accept or reject. This memorandum cannot be classified as "extraneous" material which was not properly before the jury, as was the case in *Griffin* and *Bieles*. Further, as the trial court correctly noted, the jury could have taken notes on the elements of damages that counsel suggested during closing argument.

IV. CONCLUSION

For the reasons stated, we affirm the judgment of the circuit court.

Affirmed.

COOK and LUND, JJ., concur.